The next matter is Liberty Woods v. Motor Vessel Ocean Quartz and I represent the plaintiff appellant in this case, Liberty Woods International. I request five minutes in rebuttal. The first thing I did as a district judge was to arrest the ship. And I thought, by God, I have really done something now. At least you know what it is. I've had judges ask me, does that mean we put it in jail or that sort of thing. I sat at my desk and signed a paper and that was it. I had arrested the ship. Well, it's a pretty... It's weird. Admiralty Law is weird. Weird? Well, we're used to it, I guess. And it's a pretty nice community, the Admiralty Bar, so... So, there's a document you signed that you have to... Well, we didn't sign the document. The document is a bill of lading, which is a contract of carriage, and the ship is bound by the bill of lading. There's no dispute as to that. You brought no action at all in South Korea? No, we did not, no. The reason you didn't... Well, we decided... We've had other cases in South Korea, and I don't cast any dispersions against the courts of South Korea, but we did not feel that we would be successful in Korea. And like all attorneys... Which is exactly what Scott Riefer talked about. Well, some of it. I mean, we're not making an argument that the forum clause is not enforceable and that sort of thing. Well, you argue that some of it is not enforceable because you're denying the interim action that the bill of lading... as your opponent suggests we need to, then the interim action that you say you have a right to is taken away. Yes, it is. In Korea, it's not available. So what we did, I mean, we evaluated the case, and like all cases, we tried to figure out what was the best venue for our case, where did we have the best chance of success, do we want to go to Korea, and we made a decision not to go to Korea, and we made a decision to pursue our interim rights, which we have a right to do under U.S. law. But the insurer said here that it only was liable for a letter of undertaking. Is that right? The vessel, I mean, the procedure is they put up a letter of undertaking, which is a substitute for the arrest. It's exactly the same as if we had arrested the vessel. And the argument of the insurer thereafter was what? What insurer, you mean? Didn't it presume that you had to go after the negative persona of action? Maybe it was a shortfall? No, no. The interim actions in admiralty law are basically. What about the letter of undertaking? The letter of undertaking represented the security in the ship that you would have had in an interim action. As a remedy. No, what the letter of undertaking does is it's a way that we've all kind of come to agree in the maritime bar to short circuit actually arresting the vessel and posting a bond. And I thought it worked like very similar to bail. I'm not that familiar with criminal law. Admiralty law is natural to me, but the criminal law is not, so I can't make an analogy to bail. But what happens with the letter of undertaking is basically I call up my opponent, Mr. Whelan, who I've known for a long number of years. I said, look, the vessel is coming in. We intend to assert our interim rights. We intend to arrest the vessel unless you put up a letter of undertaking, which we don't have to accept, but everybody agrees that it's acceptable. And then instead of the vessel actually being arrested and a bond being posted and an interim appearance being forced that way, we do it through the letter of undertaking where the P&I Club for the vessel guarantees to pay a judgment up to a certain amount and they agree to make an interim appearance. So we have an interim claim where the vessel itself under the law in this circuit and throughout the United States the vessel is personified. It's a separate defendant, and we're allowed to proceed against the defendant for full relief. It's available. It's a maritime lien. It's available for it. We all use it in the maritime bar. It's very important. If you don't like the terms of the letter of undertaking, can you reject it and say give us something better? Well, you can try and do that, but the letter of undertaking is you're limited in scope because you can't get more in a letter of undertaking than you could get if you actually arrested the vessel. So what you get in a letter of undertaking is exactly the same thing that you get when you arrest the vessel, which is you get security for a judgment and you get an interim appearance. And what else do you need? I mean, what then is lacking? The fact that Korea and Japan and Germany and a lot of countries don't recognize interim proceedings. What are you missing with the letter of undertaking? Well, what we're missing is that we cannot proceed here if the forum clause of the Bill of Lading is enforced and we're sent to Korea because Korea, and that's an agreed fact in the case, Korea does not recognize interim actions, so our interim action here cannot be prosecuted. Right, but they recognize letters of understanding, and I'm saying what was lacking in the letters of understanding that you would have had in an interim proceeding? Well, there's nothing really lacking. The problem is that the interim proceeding that we started here under U.S. law and the law of this circuit would allow us to prosecute the case to a conclusion and to make a recovery of damages if the court found we were entitled to do it. But if you enforce the forum selection clause, then we're out of luck in Korea. Well, why? Because letters of undertaking are recognized by the Korean court. You know, we have cases that. . . No, but respectfully, Your Honor, the letter of undertaking. . . Sky Reefer was Korea, wasn't it? No, Sky Reefer was Japan. Okay, well, then the 9th Circuit case was Korea. Fireman's Fund. Now, what the letter of undertaking says and agrees to do is to pay any judgment in rem against the vessel itself. It's just security for our U.S. in rem claim. It's not security for any in personam claim. If you look at the. . . Right, but so you've got a valid in personam claim, and you have a letter of understanding,  So you had the opportunity for full credit if you went to Korea, but you didn't want to go to Korea. Well, we didn't. But you've got to recognize forum selection clauses. The Supreme Court tells us that. Well, they do tell us that, but the Supreme Court and Sky Reefer also said that there's Section 3A of COGSA, which invalidates, which makes null and void, and of no effect any clause in a bill of lading, which reduces the carrier or the ship's liability. And this particular clause does that. It doesn't reduce the liability. It reduces. . . It increases the cost of getting the recovery, but. . . It may limit the procedure by which you get the recovery. No, it's not. It's not the procedure. It's basically. . . The items which are protected by COGSA, the Supreme Court has told us, are not endangered by going to a country like Japan that doesn't recognize NREM with a letter of undertaking. Well, it is jeopardized in this case, though. We have. . . The only thing that was jeopardized in this case because of your own inaction and unwillingness to pursue the remedy that you did have. Well, I think, Your Honor, that we respectfully. . . I think we were entitled to put our best foot forward in our case. I think my job as a counsel is to recommend to my client the action, the course of action, where to file and so forth that would be most effective. And what we decided to do is that the most effective way to prosecute this case would be to file an NREM action in the District of New Jersey because the vessel was calling there. Well, we can do that. Well, we definitely can do it. The question is whether we then get sent to Korea or not. I'll come back to the question. Is it your position that under COGSA, shippers may always ignore a foreign selection clause that designates a forum where you can't have an NREM action? Or, alternatively, is it your position that COGSA only requires an NREM action in the U.S. be available when litigation in the forum outside the U.S. that's designated in the Bill of Lading has failed to adequately compensate? Well, our position is, our first position is that Bills of Lading under COGSA was basically a compromise between ship interests and cargo interests. And if we start letting – and Section 3-8 guarantees NREM claims. No, the first position is that all of those cases are decided on the basis of the Fireman's Fund case and they're decided incorrectly. Hold it and answer that question in rebuttal. You saved five minutes, I think. You've got a chunk of time. Okay. Just make sure you don't answer that question. Finish your answer in rebuttal. Okay. Well, our first position is – Okay. Let me try it again. Yeah. Could you give us your first position and your second and your third position and the other positions on rebuttal? Okay, I will. Thank you, Ron. Thank you. Good morning. May it please the Court. Good morning. Richard Whalen of Plumberby's. I've been Henderson for the Appalese Dahlia Ship Holdings for the registered owners and the claimants of the vessel Ocean Quartz NREM. This case involves an agreed Korean Forum Selection Clause and a contract of carriage. I have a problem with this. If you are a textualist, does it come to say that any clause, covenant, or agreement in a contract for a carriage, leaving the carrier or the ship for liability or lessening such liability, shall be null and void? Even if you're not a textualist, which I don't put myself in that category. Well, let me explain that, Your Honor. I disagree that COGSA guarantees an NREM cause of action. But what does it say? What COGSA, I think to understand it, is that the language in Section 3 cannot be interpreted or used to create or somehow guarantee an NREM cause of action, and this is the reason why. COGSA is the codification of the Hague Rules of 1924, and it was the purpose of the Hague Rules and COGSA were to establish a uniform system of international rules. And this was to say that there can be liability if you do that. Correct. And it was a uniform system for international rules for cargo carriage. The Hague Rules was an international convention of 66 countries, one of which was the United States. And some of the signatories of that convention, that I think as Judge Roth had pointed out earlier, do not even permit NREM causes of action. So the language in – if you look at the language in which the Liberty Woods is relying on in 3.8 and you compare it to what the Hague Rules in 1924 language, it's virtually identical except the Hague Rules changed the word convention and article to act and section in COGSA. That's the only change. So under Skye Reefer, both held that both the Hague Rules and COGSA are meant to be interpreted and applied uniformly in international forms of dispute resolution. And Japan doesn't represent NREM – doesn't recognize NREM either. So, I mean – That's correct. It's a very similar situation. Well, it is similar because the Skye Reefer case said that that involved an arbitration clause and there but a subset of foreign forum selection clauses. And I think Skye Reefer – Suggested Skye Reefer basically the public policy inconvenience. We have a better shot if we sue in an American court than in a foreign court. We don't think foreign courts will faithfully apply the law. They wanted to stay here. And the U.S. Supreme Court said that's not good enough. That's really not the same as what we have here. Well – And I'm troubled and I think this goes back to the question that suggested a textualist interpretation or the ship from liability. I can't resolve that. It's a sloppy case. I think you'll agree it. What does that mean, or the ship? Well, I think, Your Honor, you have to look further into COGSA and look at the definitions which defines a carrier as including the owner or charterer who enters into a contract of carriage with the shipper. The ship isn't included in that. It also defines the ship as used in the statute. The ship is any vessel used for the carriage of goods by sea. But it says any clause, covenant, or agreement in a contract of carriage, bill of lading, I think you'll agree is that, relieving the, you know, take-out carrier or the ship from liability. How do we get around that? Well, I think it's because COGSA, if you look at the fact that it is, in fact, the codification of the Hague Rules. The Hague Rules, again, international convention, has to be applied uniformly throughout the world, international forums for dispute resolution. Many of these countries don't allow NREM claims. So it's virtually impossible for COGSA to have intended to guarantee an NREM cause of action. There aren't many countries that do recognize NREM, are there? That's correct, Your Honor. Beyond the United States? That's correct. And I think if you look, Your Honor, at even the case that's relied upon by the plaintiff, the Mann-Ferrestall case out of the Second Circuit, it clearly says that if you compare, it's held, that the discussion of whether or not a ship NREM is a carrier under COGSA is irrelevant because NREM liability exists under maritime law and not COGSA for a violation of a carrier's contractual or statutory COGSA obligations. It's a set, it's created by U.S. maritime law. And being, that case talked about COGSA being,  or assuming the existence, COGSA assuming the existence of an NREM cause of action. And as an enactment of international convention, COGSA also must assume the existence of foreign laws that must be applied in international forms of dispute resolution. And it's important to look, to understand here also, that in this contract of carriage, in addition to the forum selection clause, which I believe is paragraph 33, paragraph 32 has an applicable law provision. That provision simply calls for the bill of lading to have effect subject to the provisions of COGSA. It does not incorporate U.S. maritime law, and U.S. maritime law is what creates the NREM cause of action. It's a separate and apart from COGSA because COGSA must recognize the various, as a uniform system for international carriage of cargo, must recognize all countries. And it does not call for the, our bill of lading, section 32, does not call for the application of U.S. maritime law. And there's a Supreme Court case that supports this argument, Kawasaki-Keison v. Riegel-Balloy, 2010 Supreme Court case, where the bill of lading in that case had a foreign forum selection clause calling for Tokyo, and then had a foreign law clause calling for Japanese law, but incorporated COGSA. A contract of carriage can incorporate COGSA without incorporating the entire body of maritime law, including the right to an NREM cause of action. But wouldn't COGSA automatically be by force of statutory law or treaty law, included in a bill of lading whether or not it's ever incorporated? Not necessarily. It depends whether it's a private contract of carriage or a common carriage. But going back to the Supreme Court case in Sky Reefer, if you look at that carefully, the court clearly sets forth the statutory duties and obligations under COGSA that cannot be lessened by a COGSA carrier. And they call it the explicit duties. And those duties are to properly load, stow, handle, carry, and discharge cargo, for example. And to issue a bill of lading, that's COGSA sections 3 and 1 through 3, subsections 1 through 3. They didn't include an NREM cause of action. And the Supreme Court stressed But Sky Reefer did give a two-step escape match. One, where there was no subsequent opportunity for review. And two, where we persuaded that the choice of forum as well as the ballpark of this op-ed in tandem is a prospective waiver on the party's right to pursue statutory remedies and isn't NREM a statutory remedy. No, I know, Your Honor, because Sky Reefer answered that question on page 540 of the decision in a U.S. site that says it characterized the stayed NREM cause of action, the remainder of the cause of action that was stayed in Sky Reefer, as the award enforcement stage of the case. And Sky Reefer was careful to distinguish between and said that the explicit duties and obligations of a carrier You're stating Justice O'Connor's concurring opinion. Excuse me? 542 is Justice O'Connor's No, no, 540, 540. 540, all right. And they stress, the Supreme Court, that these explicit duties and obligations that they listed, which did not include NREM, are to be separate and apart from the mechanisms for enforcement. And then, so clearly, they're referring to the NREM, or what remained in that case, stayed in the District of Massachusetts as the award enforcement stage or a mechanism for enforcement. So this is precisely what we have here. We have the NREM as the enforcement stage. It's not part of those duties and obligations that are required under COGSA that cannot be lessened under COGSA by a COGSA carrier. And, again, it's important to note that a ship cannot be a COGSA carrier. A ship is not a carrier. Plenty of some cases admit that. The Manferestall case. A ship is an inanimate object that cannot – its conduct cannot create liability under COGSA. You need the conduct of a COGSA carrier in order to obtain an eventual judgment against a ship NREM, being the maritime portion of the case. So you always need the conduct of a COGSA carrier in order to go forward against a ship NREM. And here, going back to, I think, Judge Ambrose's point, is the plaintiff basically, in this case, intentionally discarded and lost its viable and persona claims by not pursuing them. And getting back to factually, in this case, the NREM claim was filed, and for three weeks thereafter it still would have been timely to present the case. It was filed in the District of New Jersey, and there was still an extension that went through January 15, 2016, another three weeks to file in Korea. They intentionally chose to discard and lose those NREM claims against the COGSA carriers in Korea. And they, as admitted in the argument earlier, that they fully assessed the situation, and this was a conscious decision. You cannot, however, it's admitted in the case, that in Korea it allows a cargo claimant to arrest vessels or attach assets in jurisdictions outside of Korea, such as the United States here, to obtain security for an impersonum judgment in Korea. So, if you look at this case, this plaintiff cannot be put in a better position than the plaintiffs that are in Sky Reefer or the Second Circuit case of Thyssen. Are you saying there's a mechanism under Korean law to basically effectuate, under different names and different process, the NREM remedy? It sounds like that's what you're saying. That's correct. If you look at the, I think it's at the appendix, page 119 to an appendix, there's an affidavit from the Korean lawyer that we employed that indicates that it's, under Korean law, a cargo plaintiff can obtain security in other jurisdictions by either arresting vessels or attaching assets, which happens all the time, because that's called the Rule B attachment, and use those, that security to respond to any judgments that may be obtained in Korea. So, in this case, you have, the plaintiff was in, at the beginning of the case, before they did their conscious decision, were in the same exact position as the plaintiffs in Sky Reefer and in Thyssen. And in Thyssen, the plaintiff went to London, they agreed to a London court. Because England doesn't recognize NREM either, does it? That's correct. And the London court said, hey, you're time barred in England. Then they came back and said, okay, we have our isolated NREM cause of action, just like here. We're going to go ahead there, because we were deprived under Section 3.8 of COGSA, our NREM remedy, which is a faulty proposition in our view, so we're going to plow ahead on that and get sort of a second bite of the apple. And the Second Circuit said, no, it's untenable, it would be untenable to allow plaintiffs to go forward either directly to enforcement with an NREM claim or take a shot at the impersonum and then come back and say, oh, we didn't like what happened in Korea or Japan or wherever. We're now going to come back and have a second bite at an NREM cause of action. The plaintiff here basically lost their case in Korea. It's no different than going there and losing the impersonum claims in Korea. And now it wants to come back here and have a second bite at an isolated NREM cause of action. And that's not permissible under both SkyReefer and the Thyssen decisions. The other point I would like to make is I think the real issue in this case is not whether there's an NREM cause of action in Korea. It's whether the plaintiffs had a viable impersonum COGSA cause of action in Korea against the two COGSA carriers, SK Shipping, who issued the bill of lading, were long-time business partners with Liberty Woods in this case, Korean Corporation, and also Starbull Carriers. That's the question. Would Korea have provided an adequate impersonum forum for them? And the answer is yes, it's undisputed. That's, again, in the affidavit from the Korean lawyers that there were viable impersonum claims, and I think both sides agree on this, that could have been processed there. Now, the plaintiff may impermissibly speculate that you might not have done well there. Under SkyReefer, that's just not permitted. And I would suggest, Your Honors, that to accept this, the faulty premise that an NREM action is guaranteed by COGSA, will, in effect, eviscerate the entire SkyReefer holding, the case in Thyssen, and turn everything on its head in terms of maritime law. Basically, it's been going on for years in supporting and- Well, if I could cut off Mr. Industry if I could please. Okay, I'm sorry. Thank you very much, Your Honor. To answer Judge Ambrose's question, our position is that the Fireman's Fund case was incorrectly decided, and all the cases that really are against this flow from the Fireman's Fund decision. The second point that I wanted to make was that all of the cases that are against this, the NREM action is basically a tag-along action, and by that I mean it's just there for security purposes. The main claim- Okay, NREM is you grab the ship for security. Yes. A letter of undertaking is you grab an acknowledged amount of security from arresting the ship. NREM and the letter of undertaking are identical, they're the same thing. Right, so what's the problem? Exactly the same. You just don't want to go to Korea? No, the problem is that we have NREM rights here. It's not a question of expense going to Korea or anything. If it's just a question of expense, we would be there in a heartbeat. We've had experience there on cargo cases. It's like in the United States. Why don't you insist then on shipping with a bill of lading that doesn't pick Korea as the forum? Because bills of lading are basically contracts of adhesion. If you look at the bill of lading clauses in this case, you can't read them without a magnifying glass. There's a whole history, a statutory history. Liberty Woods has read a lot of them with magnifying glasses. You don't have a lot of business to a lot of ships. You don't have choice. Really big shippers like Walmart and people like that can enter under the Shipping Act. They can enter into service contracts, which is where things are actually bargained. But where you have a public carriage type of situation like we have here, it's a take-it-or-leave-it situation. I mean, there are no holes in the bills of lading for filling in things. There's no negotiation that goes on. You either accept the bills of lading or you go someplace else. I mean, that's the way the whole business is. That's the way the statutory framework is worked up. There just isn't. Shippers like Liberty Woods International do not have enough business to dictate the terms of bills of lading. In a way, it's possibly a bill of lading decision. You must seek in persona liability in the designated form. That's a bill of lading decision. Now, you also could seek in rem in the United States District Court. But they would probably hold it in abeyance of people who did have jurisdiction for the conclusion of the litigation. At that point, if the blame is for covering in the forum outside of America, it's less than what it would have been from an in rem action, then you may pursue further liability in rem in the United States, or in respect to the letter of undertaking in the States. But here, if a client fails entirely to seek in persona liability in the designated form, why should it be – should it not be prohibited in seeking recovery in rem? Otherwise, that's an end around. Well, it's not really an end around because ship owners can always change their clauses. And if this court were to decide in our favor, very shortly they would amend the clauses, the forum clauses to protect our in rem rights. If they did that, then we wouldn't have any complaint at all that they have not done that. But I think perhaps what I'd like to say in response to you, Judge Ambrose, is that in rem actions in the United States are separate, stand-alone actions that people are entitled to proceed. In the United States, but not the rest of the world. The rest of the world has in rem, but they're considered procedural. You can still arrest vessels. There are, you know. You get the security, which is in essence what we're talking about. Well, what we're talking about here is a specific statutory provision, section 3-8, which says that any clause covered in our agreement relieving the carrier or the ship, or the ship, is invalid, shall be null and void, and of no effect. And if you need a specific site to that, you can look on page 85 in the Mann-Forrestale case of the Second Circuit, 2012. But you aren't relieving the ship of liability if you can arrest the ship and get a letter of undertaking for the amount that is needed. But we're unable to prosecute that because they're trying to force us to go to Korea. Essentially what they're doing is they're sneaking an exculpatory clause in the Bill of Lading, relieving us, relieving cargo interests of our in rem rights. But they aren't, because you agreed to what I just said, that you can arrest the ship and get the security that you need that is recognized in Korea. I only have nine seconds, but I just want to say I've had many cases where I only proceed in rem. I'll give you an example. I had a case coming into Newport where they accidentally. No, you do it in the 28-J letter. But I am anxious to see that example. Send us the 28-J letter and send a copy to Mr. Whelan, who may want to respond. Okay. Thank you very much. This is actually a transcript of the argument. And if you check with Ms. Amato, she can explain to the details how we get a transcript. Okay. Thank you very much. Thank you.